UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
MARCO MARTINEZ and ELSA HERNANDEZ,                           Civil Action No
individually and on behalf of all others similarly situated,

                           Plaintiffs,                           18-cv-04668(VB)

                  -against-

PARAMOUNT COUNTRY CLUB, LLC,                              .

                        Defendant.
------------------------------------------------------------------------------X


**PLAINTIFF ELSA HERNANDEZ'S OBJECTIONS TO
MAGISTRATE JUDGE JUDITH C. MCCARTHY'S
REPORT AND RECOMMENDATIONS**


Katz Melinger PLLC
280 Madison Avenue, Suite 600
New York, NY 10016
Telephone: (212) 460-0047
Facsimile: (212) 428-6811

Hach Rose Schirripa & Cheverie LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028

*Counsel for Plaintiffs*

## PRELIMINARY STATEMENT

Plaintiff Elsa Hernandez ("Hernandez") respectfully submits this objection to Magistrate Judge Judith C. McCarthy's April 1, 2019 Report & Recommendations (the "Report") regarding Hernandez's motion for attorneys' fees (Dkt. No. 39) ("Hernandez's Motion"). The Report provides that: (1) denial of Hernandez's Motion in its entirety for failure to submit a retainer agreement is not warranted; (2) Hernandez is not entitled to fees incurred after January 23, 2019, the date of PCC's Rule 68 offer of judgment; (3) Hernandez's attorneys' hourly rates should be reduced to: $400.00 per hour for Kenneth Katz and Frank Schirripa, $250.00 per hour for John Blyth and Adam Sackowitz, $200.00 per hour for Katherine Morales, and $125.00 per hour for Nicola Ciliotta; and (4) after applying a 40% reduction to all fees incurred prior to January 23, 2019, Hernandez should be awarded $17,224.50 in attorneys' fees.

The underlying facts of this case and procedural posture is described in Hernandez's Motion and will not be repeated herein.  At the time Hernandez submitted her Reply to Paramount Country Club, LLC's ("PCC" or "Defendant") Opposition to Hernandez's Motion ("PCC's Opposition"), in which PCC argued that Hernandez's fees should be significantly reduced if not denied altogether, Hernandez requested fees amounting to $58,682.50 for work performed by her attorneys Katz Melinger PLLC ("Katz Melinger") and Hach, Rose, Schirripa & Cheverie LLP ("HRSC"). *See* Declaration of Kenneth Katz ¶¶ 9-10. The Report reduces Hernandez's fees in three ways: lowers Hernandez's attorneys' respective hourly rates in amounts ranging from $50.00 to $100.00 per hour; deems that fees incurred after the date of PCC's Rule 68 Offer are not compensable; and further reduces Hernandez's fees by applying a 40% reduction to the fees incurred prior to the date of PCC'S Rule 68 Offer[1]. *Id*. at ¶ 4.  The Report's recommended fee

---

[1] The defined terms used in Hernandez's Motion will be used herein.

award of $17,224.50 effectively denies Hernandez fees amounting to $41,458.00 and compensates Hernandez's attorneys at a rate of about $99.16 per hour, exclusive of the additional fees sought for this objection.

For the reasons further discussed below, Hernandez objects to the Report's second and fourth recommendations, which denies Hernandez all fees incurred after the date of PCC's Rule 68 Offer, January 23, 2019, and reduces all fees incurred prior to said date by 40%, respectively.

**ARGUMENT**

## I.   STANDARD OF REVIEW

In evaluating the Report, this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely and specific objection has been made, the Court must review the contested issues *de novo*. Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).  Hernandez's objection herein has been timely filed and served and she respectfully requested that the Court conduct a *de novo* review of her objections to the Report's recommendations that Hernandez's attorneys be denied all fees incurred after January 23, 2019, the date of PCC's Rule 68 Offer and that fees incurred prior to said date be reduced by 40%.

## II.   HERNANDEZ'S OBJECTIONS TO THE REPORT

### A.   The Report ignores equity and public policy considerations in denying Hernandez fees incurred after the date of PCC's Rule 68 Offer.

Given that the terms of PCC's Rule 68 Offer curtails Hernandez's fee award to the date of its Rule 68 Offer, the Report recommends that Hernandez be denied fees incurred after January 23, 2019, or in other words, that Hernandez be denied fees incurred in making and defending her fee application. The Report reasons that "the Court does not identify an equitable basis to disturb the parties' agreed-upon limitation." *See* Report p. 6. While the district courts in this Circuit are

2

divided as to whether fees should be awarded after the date of an offer of judgment, Courts that have ultimately allowed for recovery of such fees have based their decisions on the very equity and public policy considerations that are present in this case.

PCC could have chosen to offer a specific monetary amount in attorneys' fees in its Rule 68 Offer. Instead, PCC chose to curtail Hernandez's fees to the date of the Rule 68 Offer while simultaneously requiring Hernandez to incur fees in making her fee application. PCC knowingly chose a process for the determination of Hernandez's fees which would necessarily require Hernandez to incur fees in filing her fee application after the date of its Rule 68 Offer, leaving Hernandez with two options both of which carried the possibility that Hernandez's fees would be curtailed at the date of PCC's Rule 68 Offer.

Hernandez's first option was to reject PCC's Rule 68 Offer. However, throughout this action, PCC claimed, without providing proof, that Hernandez did receive the payroll notice required under NYLL § 195(1)[2], which if true would reduce Hernandez's damages from $11,890.00 to $6,890.00. Thus, if PCC produced said payroll notice, it would be impossible for Hernandez to obtain a judgment more favorable than PCC's Rule 68 Offer of $8,008.52 and, as a result, Hernandez's fees would be limited to the date of PCC's Rule 68 Offer. *Marek v. Chesny*, 473 U.S. 1, 9-12 (1985)(noting that "[c]ivil rights plaintiffs—along with other plaintiffs—who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected."); *Short v. Manhattan Apartments, Inc.* 2013 WL 2477266, at *5 (S.D.N.Y. June 10, 2013)("Rule 68 not only entitles a defendant to costs in certain circumstances but also cuts off a plaintiff's right to recover attorney's fees and costs incurred after the date of the offer."). Hernandez's second option, the one she ultimately chose, was to

---

[2] Hernandez's damages for violations of NYLL § 195(1) amount to $5,000.00.

3

accept PCC's Rule 68 Offer; however, as is evident, this option too carries the possibility that Hernandez's fees will be limited to the date of PCC's Rule 68 Offer. Thus, no matter which option Hernandez chose, she faced the same outcome – denial of fees incurred after the date of PCC's Rule 68 Offer or, in other words, denial of fees Hernandez was required to incur in order to make her fee application. PCC's Rule 68 Offer should not be allowed to be both a deterrent to continue the litigation and a deterrent to resolve the matter and end the litigation.

Furthermore, the denial of fees Hernandez incurred after the date of PCC's Rule 68 Offer has equity and public policy implications in favor of a holding that Hernandez is entitled to fees for the time spent making and defending her fee application. The Second Circuit has artfully articulated the reason why a "fees on fees" award is appropriate, and in accordance with the policies of cases such as this, whereby Congress has provided employees, often low paid employees, an avenue to publically enforce rights that the Department of Labor does not have the resources to enforce. By providing an award of attorneys' fees, including "fees on fees", it sought to encourage attorneys to handle these types cases without being paid on an hourly basis by their client. In doing so, the Second Circuit has recognized that if attorneys were not awarded "fees on fees" their hourly rates would diminish proportionately and discourage said attorneys from handling these types of cases. The reason denying a "fees on fees" award is inappropriate is that it "…would permit a deep pocket losing party to dissipate the incentive provided by an award through recalcitrance and automatic appeals" and "… would not comport with the purpose behind most statutory fee authorizations, Viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies." *Gagne v. Maher,* 594 F.2d 336, 344 (2d Cir. 1979), aff'd, 448 U.S. 122, 653 (1980).

The First and Third Circuits have also echoed these very concerns in upholding "fees on fees" awards. *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."); *Prandini v. Nat'l Tea Co*., 585 F.2d 47, 53 (3d Cir. 1978) ("…courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent litigating the issue of a reasonable fee I. e. for time spent on the fee application and successful fee appeals."). These equity and public policy considerations are present in this case.

Indeed, PCC's choice to curtail Hernandez's fees to the date of the Rule 68 Offer continues to dilute the value of Hernandez's fee award by forcing her attorneys into extensive, uncompensated litigation in order to gain *any* fees. PCC should not be allowed to simultaneously request that this Court reduce or deny Hernandez's fee award while at the same time arguing that Hernandez is not entitled to any compensation for the time spent opposing said requests. From the date Hernandez retained her attorneys until the date Hernandez submitted her Reply to PCC's Opposition, Hernandez's attorneys spent approximately 173.7 hours on this matter. Given the Report's recommended fee award of $17,224.50, Hernandez's attorneys' effective rate of compensation is less than $100.00 per hour, exclusive of the time spent preparing this objection.

This rationale was also applied by Courts in this very District in allowing parties to recover fees incurred after the date of the offer of judgment, despite the express terms of said offer of judgment before the Courts. *Rosado v. City of New York*, 2012 WL 955510, at *6 (S.D.N.Y. Mar. 15, 2012) ("as a matter of equity, plaintiff should be awarded some amount for the time his counsel spent in preparing the instant fee application. By not settling the attorneys' fees issue, the City was put on notice that time spent by counsel in seeking fees would become a component of "reasonable

attorney's fees."); *Lilly v. City of New York*, No. 2017 WL 3493249, at *8 (S.D.N.Y. Aug. 15, 2017) ("the Court finds that as a matter of equity, Mr. Rothman should be awarded fees for the time he spent preparing the application… Defendants were certainly on notice that Mr. Rothman's fee application would include a fees on fees component."); *Lee v. Santiago*, 2013 WL 4830951, at *13 (S.D.N.Y. Sept. 10, 2013) ("Court concludes that it retains discretion to award reasonable compensation for [the time spent on the fee application]… Defendants nearly concede as much in their opposition, by requesting that such fees either be denied or, in the alternative, reduced.").

Lastly, denying prevailing parties, such as Hernandez, fees incurred in making and defending their fee application would incentivize non-prevailing parties to fervently oppose prevailing parties' fee applications, with the knowledge that continued ligation further dilutes the fee award and makes prevailing parties more likely to accept a settlement well below the fair and true value of the claims. This would effectively override prevailing parties' right to an award of attorneys' fees, which not only ensures the "vindication of Congressionally identified policies and rights" but also serves insure that prevailing parties like Hernandez have "effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Grochowski v. Ajet Const. Corp.*, 2002 WL 465272, at *2 (S.D.N.Y. Mar. 27, 2002).

**B.  The Report's 40% reduction of the fees Hernandez incurred before PCC's Rule 68 Offer is Excessive and Unwarranted.**

In addition to denying Hernandez an award for fees incurred after the date of PCC's Rule 68 Offer, the Report recommends a further reduction of 40% to the fees Hernandez incurred prior to PCC's Rule 68 Offer. The Report reasons that this 40% reduction is justified because (1) "the hours expended are excessive considering the quick and early resolution of Hernandez's claim"; (2) "Hernandez did not explain why she retained two law firms"; and (3) "although Hernandez's

counsel removed time entries unrelated to Hernandez's claim, it is clear that there are hours attributable to Martinez and the class action that cannot be fully parsed out." *See* Report p. 10.

The Report states that given the work that Hernandez's attorneys performed, specifically, amending the complaint, attending mediation, and opposing a motion to compel arbitration, the hours incurred are excessive. However, it should be noted that in performing these tasks, Hernandez's counsel was required to perform work that is not normally required in a routine single plaintiff wage and hour case. Moreover, the reduction essentially penalizes Hernandez for participating in a mediation ordered by the Court, defending a motion to compel arbitration filed by PCC before it made its Rule 68 Offer, and for diligently preparing for litigation of this matter.

For example, in its motion to compel arbitration, PCC argued that Hernandez, as well as other PCC employees, signed an alleged arbitration agreement, which Hernandez adamantly denies. As a result, Hernandez's counsel was required to locate various witnesses to corroborate Hernandez's and PCC's claims. Hernandez's attorneys ultimately located and conferred with approximately seventeen current and former employees of PCC regarding not only Hernandez's wage and hour claims but also PCC's allegations that its employees signed alleged arbitration agreements. Moreover, while this case has not yet entered discovery, the parties did engage in informal discovery throughout the case, which required not only the review of various records regarding Hernandez's employment with PCC but also various detailed computations of her damages. Furthermore, Hernandez's claims are part of a larger class of plaintiffs, possibly comprising 150 to 500 additional plaintiffs. As such, Hernandez's attorneys prepared for, investigated, and litigated this case as a putative class action. The fact that Hernandez's claims were settled quickly and separately from the class suggests that her counsel diligently worked on her case and does not render Hernandez's claims routine and unqualified for just compensation of

her fees. Hernandez was ultimately able to recover $8,008.52 of $11,890.00, the maximum damages she alleged. To hold that Hernandez's attorneys' efforts in securing such a favorable resolution was excessive would penalize Hernandez's counsel for fervently asserting her claims, diligently prosecuting her claims, and securing nearly all of the damages due to Hernandez, or potentially, more than her total claim if PCC's defense to the NYLL § 195(1) claim was valid.

Furthermore, while the Report states that Hernandez did not "explain why she retained two law firms… which resulted in duplicative billing and an excessive amount of entries devoted to conferring with co-counsel" (*See* Report p. 10), Hernandez provided such an explanation in her Reply Memorandum of Law to PCC's Opposition and in the Declaration Kenneth Katz, included along with her Reply. *See* Hernandez's Reply Memorandum of Law to PCC's Opposition p. 6; Reply Declaration of Kenneth Katz ¶ 8. As mentioned therein, this matter is a putative class action seeking damages in excess of $5,000,000.00 and with potentially 150 to 500 class members. Given the complexity of class action litigation, the numerosity of class members, and the legal and procedural requirements for class action certification, Hernandez was required to retain class counsel that is qualified and experienced in class action law and wage and hour litigation. Upon planning to file a putative class action, Hernandez's original counsel, Katz Melinger, obtained co-counsel HRSC, who has the requisite resources and experience handling class actions to assist in the matter. The retention of HRSC was not only necessary to comply with requirements of class action certification but also to protect Hernandez's and the putative class' best interests.

The Report also states that the retention of two law firms resulted in an excessive amount of entries devoted to conferring with co-counsel. However, Hernandez's attorneys' time records reflect only 15 time entries, out of almost 100, were a conference with co-counsel was logged prior to the date of PCC's Rule 68 Offer. All of these time entries, except for two time entries, also

include time spent working on other tasks. However, even assuming that these 15 time entries are solely attributable to time spent conferring with co-counsel, such a reduction to Hernandez's fees would still be far below the recommended 40% reduction of Hernandez's already reduced rates.

The Report also states that a 40% reduction is warranted because there are time entries that are clearly attributable to Martinez and the putative class action that cannot be parsed out. Hernandez disagrees that this would warrant an additional 40% reduction to her fee award, especially since Hernandez's counsel has already excluded from her fee application time entries which are not attributable to Hernandez. *See* Reply Declaration of Kenneth Katz ¶¶ 9-11. Furthermore, Hernandez's counsel could not have anticipated that this matter would be resolved separately from Martinez and the putative class and therefore should not be penalized with a 40% reduction for failing to parse time entries between all of the plaintiffs in this case. Moreover, the major portions of the time expended on this case, preparing for and attending mediation, which amounts approximately 36.4 hours and opposing PCC's motion to compel arbitration, which amounts to approximately 43.6 hours, would have been required whether Hernandez was a class representative or a single plaintiff. Therefore, the time spent performing these tasks, which amounts to 80 of the 100.3 hours Hernandez's attorneys spent on this matter prior to PCC's Rule 68 Offer, should not be part of any reduction based on failure to parse work amongst Hernandez, Martinez, and the putative class.

Lastly, while the fee award Hernandez requests far exceeds her recovery in this matter, Courts have made clear that "a limited monetary recovery does not preclude a substantial attorneys' fee award." *Baird v. Boies, Schiller & Flexner LLP*, 219 F.Supp.2d 510, 519–20 & n. 7 (S.D.N.Y.2002) (Chin, D.J.). "In FLSA cases… the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the

vindication of Congressionally identified policies and rights." *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011); *Grochowski,* 2002 WL 465272 at *2 ("Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees ... 'encourage [s] the vindication of congressionally identified policies and rights.' ").

## III.   <u>CONCLUSION</u>

For the reasons set forth herein, Hernandez respectfully objects to the above-referenced portions of the Report and requests that the Court enter an Order: (1) Ruling that Hernandez is entitled to attorneys' fees incurred after the date of PCC's Rule 68 Offer, January 23, 2019; (2) Ruling that a 40% reduction of the fees Hernandez incurred prior to January 23, 2019 is excessive; and (3) Granting Hernandez additional fees for the time spent objecting to the Report, which amounts to $2,925.00 in additional fees.

Dated: April 15, 2019
        New York, New York

Respectfully submitted,

**KATZ MELINGER PLLC**                    **HACH ROSE SCHIRRIPA**
                                          **& CHEVERIE LLP**

By:  /s/ Kenneth J .Katz_____      By:  /s/ Frank Schirripa_____
    Kenneth J. Katz                           Frank R. Schirripa
    Katherine Y. Morales                      John A. Blyth
    280 Madison Avenue, Suite 600             112 Madison Avenue, 10th Floor
    New York, New York 10016                  New York, New York 10016
    Telephone: (212) 460-0047                 Telephone: (212) 213-8311
    kjkatz@katzmelinger.com                   Fschirripa@hrsclaw.com
    kymorales@katzmelinger.com                Jblyth@hrsclaw.com
    *Counsel for Plaintiffs*                   *Counsel for Plaintiffs*