UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARCO MARTINEZ, individually and on :
behalf of all others similarly situated, :
                      Plaintiff, :
                                                                                **OPINION AND ORDER**
                                                                                      :
v. :        18 CV 4668 (VB)
                                                                                       :
PARAMOUNT COUNTRY CLUB, :
                      Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Marco Martinez brings this action against defendant Paramount Country Club, LLC ("Paramount"), for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Laws.[1]

        On October 17, 2018, Paramount moved to compel arbitration of plaintiff's claims pursuant to the Federal Arbitration Act ("FAA") and to dismiss or stay this action pending arbitration. (Doc. #24). On September 12, 2019, the Court held a non-jury trial to hear evidence on the motion, the parties having waived their right to a jury trial.

        For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART, and this action is STAYED pending arbitration.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[1] Co-plaintiff Elsa Hernandez accepted an offer of judgment pursuant to Rule 68(a), and the Court directed the Clerk to enter judgment as to Hernandez, exclusive of Hernandez's claim for attorney's fees. (Doc. #44). Hernandez then moved by order to show cause for attorney's fees. (Doc. #47). The Court subsequently adopted Magistrate Judge Judith C. McCarthy's Report and Recommendation recommending granting in part and denying in part Hernandez's motion. (Doc. #69).

**FINDINGS OF FACT**

The following findings of fact are based on the evidence adduced at the September 12, 2019, non-jury trial, at which the parties presented documentary exhibits as well as the testimony of four witnesses: (i) plaintiff Marco Martinez; (ii) Karl Bradley Black, Paramount's chief financial officer since 2010; (iii) Susan Wright, a member of Paramount's accounts receivable and payroll department since August 12, 2003; and (iv) Taryn Caban-Cooley, an implementation and benefits consultant at Oasis Outsourcing, Inc. ("Oasis") since approximately May 2016.

Plaintiff began working for Paramount, a private country club in Rockland County, in February 2014, as a cook. In September 2016, Paramount hired Oasis, a so-called "professional employer organization" that performs outsourced general administrative work for its clients, including payroll processing, and, as relevant here, "onboarding" of employees.

I.   The Onboarding Process

On Friday, September 23 and Monday, September 26, 2016, Taryn Caban-Cooley and another Oasis employee—the latter of whom spoke both English and Spanish—came to Paramount to oversee the onboarding of Paramount's employees. "Onboarding" essentially refers to (i) creating an Oasis account by entering employee-specific information, such as the employee's name, social security number, demographic information, and citizenship status, and (ii) signing several forms, including federal and state tax withholding forms as well as an "employee acknowledgments" form. The employee acknowledgments form contains an arbitration agreement that reads in part:

> I and Oasis agree that any legal dispute with my Worksite Employer, Oasis, or any other party that may have an employment relationship with me arising out of or in connection with my employment, application for employment, or separation from employment for which I am, was, or would be paid through Oasis, will be resolved exclusively through binding arbitration by a neutral arbitrator as provided in this

      agreement and, to the extent not inconsistent with this agreement, under the rules
      of a neutral arbitration service.

(DX A).[2]

On September 23, the Oasis employees installed about eight computers in Paramount's dining room and met with Paramount employees to give them an overview of the onboarding process. Over the rest of that day and on September 26, Paramount employees went to the dining room, at which point either Caban-Cooley or her bilingual Oasis coworker would hand the Paramount employee a paper with a "Client ID" and "Employer PIN" to begin the electronic onboarding process. Caban-Cooley or her Oasis coworker would then explain to the employee that she or he was going to fill out several forms on the computer. The Oasis employee would then ask if the Paramount employee wanted to complete the forms in Spanish or English. According to Caban-Cooley, there was also a button on the first screen labeled "En Español," which if clicked allowed employees to complete the entire process and read all of the forms in Spanish. In addition, Caban-Cooley testified she and her coworker remained available during the process to answer any questions. The entire process usually took about fifteen minutes per employee to complete.

II.      <u>The Agreement to Arbitrate</u>

Plaintiff testified that at no point did he create an Oasis account or password, and that the first time he became aware of the arbitration agreement was after he filed this lawsuit when his attorney showed him an employee acknowledgments form with his supposed electronic signature. Further, plaintiff would have the Court infer that Ms. Wright, a member of Paramount's accounts receivable and payroll department, filled out and signed the Oasis forms for him, including the employee acknowledgments form with the arbitration agreement.

---

[2]      "DX __" refers to defendant's exhibits received in evidence at trial.

The Court finds plaintiff's account implausible, uncorroborated by anything but plaintiff's own testimony, and contradicted by all other credible evidence. Indeed, the Court finds plaintiff personally electronically signed the arbitration agreement on September 26, 2016.

First, except for plaintiff's testimony, all credible evidence suggests plaintiff signed the arbitration agreement on September 26, during Oasis's onboarding. Most significantly, defendant introduced into evidence a copy of an employee acknowledgments form containing the arbitration agreement and plaintiff's e-signature, dated September 26, 2016. (DX A).

Second, defendant's witnesses credibly testified plaintiff must have attended the Oasis onboarding and signed the employee acknowledgments form during Oasis's onboarding. Mr. Black, Paramount's CFO, credibly testified plaintiff was required to attend Oasis's onboarding. Ms. Caban-Cooley credibly testified Oasis's onboarding software required employees to complete the employee acknowledgments form before moving on to the next page, indicating that if plaintiff participated in the onboarding process, he could not have left that form blank. Ms. Caban-Cooley further testified no employees indicated they did not want to complete the forms or complained at the time that someone inputted information for them. Finally, Ms. Caban-Cooley testified neither an Oasis nor a Paramount employee could change an employee's information once an employee completed the onboarding process.

Third, there is no proof of plaintiff's supposed September 26 meeting with Ms. Wright besides plaintiff's own testimony. Ms. Wright credibly testified she does not remember meeting with plaintiff or any other Paramount employee at that time, did not input any onboarding information for any employee on September 23 or 26, and had nothing to do with plaintiff's forms.

And fourth, even if plaintiff met with Ms. Wright on September 26, there is no evidence Ms. Wright filled out plaintiff's Oasis forms during that meeting.

Plaintiff's version of events is as follows: he met with an Oasis representative for about twenty minutes in September 2016 in a dining room at Paramount, along with the other cooks. The meeting was conducted in English and plaintiff, whose primary language is Spanish, did not understand anything. He then met with Ms. Wright in her office about one to two weeks later. Plaintiff believed that meeting also concerned the change in payroll. Ms. Wright, who according to plaintiff has his social security number and other personal information, sat at a computer throughout the meeting. Ms. Wright did not print out any information or document at the meeting.

Plaintiff's testimony is missing a crucial fact: that he saw or otherwise knew Ms. Wright created an Oasis account for him and filled out his Oasis forms, including his employee acknowledgments form. Rather, plaintiff would have the Court infer that Ms. Wright did so. The Court does not make that inference. Plaintiff was unable even to provide a foundation for his assertion that he knew what Ms. Wright was doing on the computer during the meeting—at one point, plaintiff even admitted he did <u>not</u> know what Ms. Wright was writing on the computer. Moreover, plaintiff testified he could not see the computer screen during the meeting. In fact, plaintiff testified he cannot read English, and thus the Court infers he would have difficulty discerning what information Ms. Wright was inputting even if he had been able to see her computer. Indeed, there is no evidence the September 26 meeting, even if it did occur, concerned Oasis: according to plaintiff, Ms. Wright did not ask plaintiff if she could create an Oasis account or password for him, and plaintiff did not otherwise testify that Ms. Wright ever mentioned Oasis during the meeting.

Moreover, plaintiff's recollection of the meeting was vague: plaintiff testified he did not remember what he and Ms. Wright talked about or whether she asked for any of his personal information. It was also contradictory: plaintiff first testified he did not speak at all during the meeting, but later testified he spoke in Spanish throughout the meeting while Ms. Wright spoke in English.

Finally, to the extent plaintiff claims some other person filled out his Oasis forms during the Oasis onboarding process in the dining room on September 26—as opposed to during a private meeting with Ms. Wright—all credible evidence suggests that is not so. Ms. Caban-Cooley credibly testified she never inputted any information for any other employee. Further, she credibly testified she was present for the whole process except for bathroom breaks—during which no employees were onboarded—and never observed Ms. Wright or her Oasis coworker input information for any other employee. Ms. Wright also credibly testified she observed the onboarding process for most of the two days and never saw any Oasis employee fill out or sign forms for Paramount employees, and she never did so herself. Finally, plaintiff did not testify or offer any evidence suggesting anyone filled out or signed his forms during the onboarding process in the dining room.

Accordingly, the Court finds plaintiff personally signed the arbitration agreement during the Oasis onboarding process on September 26, 2016.

## CONCLUSIONS OF LAW

I. <u>Enforceability of the Arbitration Agreement</u>

The Court finds and concludes plaintiff agreed to arbitrate and the arbitration agreement is valid and enforceable.

The FAA declares arbitration agreements to be "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA leaves no place for the exercise of discretion by the district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP</u>, 434 F. Supp. 2d 211, 214–15 (S.D.N.Y. 2006) (internal quotation omitted).

However, "the FAA does not require parties to arbitrate when they have not agreed to do so." <u>Volt Info. Scis., Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478 (1989). "The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 344 (2011) (internal quotation, citation, and alteration omitted). Thus, "[l]ike other contracts, . . . they may be invalidated by generally applicable contract defenses." <u>Rent-A-Ctr., W., Inc. v. Jackson</u>, 561 U.S. 63, 68 (2010). The FAA accordingly reflects "both a liberal federal policy favoring arbitration, . . . and the fundamental principle that arbitration is a matter of contract." <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. at 339 (internal quotation and citations omitted).

In deciding whether to compel arbitration, a court must decide whether the parties agreed to arbitrate. <u>JLM Indus., Inc. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 169 (2d Cir. 2004). A party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made. <u>Savarese v. J.P. Morgan Chase</u>, 2016 WL 7167968, at *3 (E.D.N.Y. Nov. 16, 2016), <u>report and recommendation adopted</u>, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016). When the party seeking arbitration meets that initial burden, the party opposing arbitration "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." <u>Oppenheimer & Co. v. Neidhardt</u>, 56 F.3d 352, 358 (2d Cir. 1995) (internal citation

7

omitted). If plaintiff raises a genuine issue of fact, the court must "proceed summarily to the trial thereof." 9 U.S.C. § 4. The party seeking to avoid arbitration bears the burden to show the agreement is inapplicable or invalid. Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).

Here, defendant presented an electronically signed and dated arbitration agreement, thereby carrying its initial burden of demonstrating the parties agreed to arbitrate. Plaintiff, however, submitted sufficient evidentiary facts showing a dispute of fact to be tried—namely, plaintiff's declaration that he never created an Oasis account or password, never signed the employee acknowledgments form containing the arbitration agreement, and suggesting Ms. Wright filled out the form for him. The Court thus held a bench trial.

Plaintiff failed to carry his burden at trial to show the arbitration agreement is inapplicable or invalid. For the reasons discussed in the findings of fact above, the Court finds and concludes that plaintiff personally electronically signed the arbitration agreement during the onboarding process on September 26, 2016. In addition, plaintiff has not offered any evidence suggesting the arbitration agreement is inapplicable or invalid.

To the extent plaintiff argues the Court should not enforce the arbitration agreement because he did not understand what he was signing, the Court rejects that argument for two reasons. First, the Court finds and concludes plaintiff was able to review and complete the employee acknowledgments form in Spanish, and a Spanish-speaking Oasis employee was available to answer any questions during the onboarding process. Second, even if plaintiff could not understand the terms of the employee acknowledgments form, "[w]ithout more, an inability to speak English or to understand the terms of a contract is an insufficient cause for

unconscionability." Suqin Zhu v. Hakkasan NYC LLC, 291 F. Supp. 3d 378, 388 (S.D.N.Y. 2017) (internal citation omitted).

Accordingly, the Court finds and concludes plaintiff agreed to arbitrate and the arbitration agreement is valid and enforceable.

II.     The Arbitration Agreement's Retroactive Application

Plaintiff argues that even if he is bound by the arbitration agreement, the Court should only compel arbitration of claims accruing after Paramount engaged Oasis in September 2016. Plaintiff asserts the arbitration agreement states the parties agreed to arbitrate disputes arising out of plaintiff's employment "for which [he is], was, or would be paid through Oasis," and as Oasis was only hired in September 2016, the arbitration agreement applies only to plaintiff's claims arising after September 2016.  (Ex. A).

The Court declines to resolve this question, and leaves it for the arbitrator to decide.

"While a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide, . . . an arbitrator presumptively resolves issues of contract interpretation and arbitration procedures." Duran v. J. Hass Grp., L.L.C., 531 F. App'x 146, 147 (2d Cir. 2013) (summary order) (internal quotations omitted). Questions concerning "time limits, notice, and other procedural issues 'which grow out of the dispute and bear on its final disposition,' are presumptively for an arbitrator to decide." Raymond v. Mid-Bronx Haulage Corp., 2017 WL 9882601, at *4 (S.D.N.Y. June 10, 2017) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83–84 (2002)).  Indeed, "[i]f the arbitration clause is broad and arguably covers disputes concerning contract termination, arbitration should be compelled and the arbitrator should decide any claim that the arbitration

agreement, because of substantive or temporal limitations, does not cover the underlying dispute." McAllister Bros. v. A & S Transp. Co., 621 F.2d 519, 522 (2d Cir. 1980).

This issue is for the arbitrator to decide. Whether the arbitration agreement applies to plaintiff's claims accruing before September 2016 is a question regarding the time limit of the arbitration agreement and concerns interpretation of the arbitration agreement. It does not concern whether the parties are bound by the arbitration agreement. Moreover, the arbitration agreement here is broad, as it covers "any legal dispute . . . arising out of or in connection with" plaintiff's employment. (Ex. A); cf. White v. Cantor Fitzgerald, L.P., 393 F. App'x 804, 806 (2d Cir. 2010) (summary order) ("[A] presumption of arbitrability [arises] when the plaintiff has agreed to arbitrate disputes 'arising under' or 'in connection with' an employment agreement.") (internal quotation omitted).

Accordingly, the Court declines to resolve whether the arbitration agreement applies to plaintiff's claims accruing before September 2016.

III.    Third-Party Enforcement of the Arbitration Agreement

Plaintiff also argues Paramount cannot compel arbitration because it is not a signatory to the arbitration agreement.

The Court disagrees.

"Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 126–27 (2d Cir. 2010) (internal quotations and alterations omitted). Further, the

10

Second Circuit has permitted a non-signatory to enforce an arbitration agreement when the plaintiff understood the non-signatory to be her "co-employer." Id.

Here, plaintiff's claims are intertwined with the arbitration agreement. In fact, the arbitration agreement states the parties agreed to arbitrate any legal disputes with the "Worksite Employer"—i.e., Paramount. (Ex. A). Moreover, the employee acknowledgments form explains that although Oasis and Paramount were not joint employers, their relationship could be referred to as "co-employment." (Ex. A).

Accordingly, Paramount may enforce the arbitration agreement.

IV.     Stay of Case

Paramount argues the Court should dismiss the case if it compels arbitration of plaintiff's claims. However, it is settled law in this Circuit that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015). Moreover, the Court has not resolved whether plaintiff's claims arising before September 2016 are subject to arbitration, but rather leaves that issue for the arbitrator to decide. Thus, this action is stayed pending arbitration.

## CONCLUSION

The motion to compel arbitration, and dismiss or stay this action pending arbitration, is GRANTED IN PART and DENIED IN PART. The parties are ORDERED to arbitrate plaintiff's claims pursuant to the terms of the arbitration agreement.

This action is STAYED pending arbitration and further Order of the Court.

By December 31, 2019, and every ninety days thereafter, the parties shall inform the Court by joint letter of the status of the arbitration.  Additionally, within ten days of completion of the arbitration, the parties shall provide a joint status report to the Court.

The Clerk is directed to terminate the motion.  (Doc. #24).

Dated: September 17, 2019
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge